## N. C. WINSTON *et als. v.* TENNESSEE & PACIFIC R. R. Co., COUNTY COURT OF SMITH COUNTY and JUSTICES OF SAID COUNTY.

1. JURISDICTION OF CHANCERY COURT. *Election.* Where a County Court submits the question of subscription of stock to a Railroad Company to a vote of the people of the county, the question whether it was submitted in pursuance of law, or, in other words, whether the County Court, under the circumstances, had authority to submit it, is a question not in the nature of a contested election between candidates for office, and the fact that a Chancery Court has not jurisdiction to hear and determine such contested election does not prove its want of jurisdiction to declare a subscription of stock void as a contract if made without authority of law.

2. SAME. In any case where the question of the obligation of a contract of subscription is to be settled, because of the want of authority on the part of the county to make it, for want of proper assent on the part of the people of the county, the question of the result of what is, by accommodation in the use of terms, called an election, must necessarily be investigated, not under the idea of contesting an election, but for the purpose of ascertaining whether the contract of subscription made has been authorized according to law, and so binding on the county.

N. C. Winston *et als.* *v.* Tennessee & Pacific R. R. Co. *et als.*

3. SUBSCRIPTION OF STOCK TO RAILROAD COMPANY BY COUNTY. *When valid.* Under Sections 1,142, 1,143 and 1,148 of the Code, *Before* the Justices of the County Court can make a voted subscription of stock to a Railroad Company, the *people*, or a majority, as provided by law, are required to give their approbation to such subscription, and this approval *must first be obtained* before any subscription is authorized, and without this a subscription is a contract wholly unauthorized, and of no validity whatever.

4. WHEN COUNTY HAS MADE AUTHORIZED SUBSCRIPTION. *Who may apply for injuncton.* *When.* Where a county has made an unauthorised subscription of stock to a Railroad Company, parties who have an interest to defeat it need not wait for the bonds of the county to be called for by the company, nor for their issuance, or attempt to issue them, nor for the assessment of a tax to pay the subscription, but may file their bill at once, and obtain an injunction.

5. SAME. Where a county has made an unauthorized subscription of stock to a Railroad Company, any taxpayer of the county, as such, has such an interest in the contract as enables him to file a bill to have the subscription declared void, and to restrain the issuance of bonds with which to pay it, and the assessment and collection of taxes to pay the principal and interest on the bonds, and this without being a stockholder in the Railroad Company.

6. STATUTE CONSTRUED. Section 1,144 of the Code provides that "*before* such application (that is to the County Court to order an election) can be made, the entire line of the road in which the stock is proposed to be taken shall be surveyed by a competent engineer, and substantially located by designating the *termini* and approximating the general direction of the road, and an estimate of the grading, embankment and masonry made by the engineer under oath, and filed with the application. The Court hold that no election can be ordered until these requirements are complied with.

7. STATUTE. *When directory.* *When mandatory.* The provisions of the above section are not directory but mandatory, the rule being that "Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly regarded as manda-

tory, and if the act is performed, but not in time, or in the precise mode indicated, it may be still sufficient, if that which is done accomplishes the substantial purposes of the statute. But the rule pre-supposes that no negative words are employed in the statute which expressly or by necessary implication forbid the doing of the act at any other time or in any other manner than as directed.

8. Constitution. *Construction.* Under Art. 2, Sec. 29 of the Constitution of 1834, the Legislature has the power to submit the question of subscribing stock to a Railroad Company to a vote of the people, and the authority given to the county by the Legislature to make such subscription, is made dependent for its exercise on the result of a vote of the citizens for or against the proposition.

9. Power of County Court to Subscribe Stock dependent upon Assent of Majority. The action of a county in making the subscription to the stock of a company, is dependent upon the assent of the prescribed majority, to be ascertained in the manner prescribed by the law, for its validity and binding force.

10. County. *A Corporation. Its powers. Rights of the members of such Corporation.* It is settled that while counties are for some purposes but civil divisions of the State, for others they are Corporations—they are political, aggregate Corporations, capable of exercising such powers as they may be vested with by the Legislature, and this being so, it follows that a member or class of members of such Corporation can ask the interposition of a Court of Equity to prevent the use of the funds of that Corporation to an unauthorized purpose, or to ask that a liability contracted to be fixed upon the Corporation, by which he is to be bound to pay his money,' as an integral part of such Corporation, shall be annulled and made without authority.

11. Same. *A trustee for the taxpayer in collecting and using the funds.* A county or Corporation, as such, so far as it uses the funds or means gathered from the taxpayers, is a trustee to a certain extent, at least, in using these funds, or collecting them for purposes authorized by law, and having only authority so to use them or collect them for such use, such trustee will not be allowed to mis-apply such funds to an unauthorized purpose, or create an unauthorized liability upon the Corporation or taxpayers.

N. C. Winston *et als. v.* Tennessee & Pacific R.·R. Co. *et als.*

12. CONSTITUTION. *Construction.* Art. 2, Sec. 29 of the Constitution confers no power upon counties and incorporated towns to impose taxes for any purpose, but only empowers the Legislature to authorize them to impose taxes for county and corporation purposes, and this the Legislature may do in such manner as it may prescribe by law, and when such authority is given the county acts under the authority conferred by law, and if an election is required, or other pre-requisite on which the taxes shall be unpaid, or the liability incurred, then the law must be pursued, and the power exercised in accordance with the statute. In so far as the county shall act beyond and outside of the authority conferred in any material requirements, it acts without any authority at all in a case like the present.

Cases cited: Mayor and Aldermen of Nashville *v.* Nichol, 9 Hum., 252; Louisville & Nashville Railroad Co. *v.* County of Davidson *et als.*, 1 Sneed, 640 and 687; Blackburn *v.* Vick, 2 Heisk., 377; Wood *v.* Draper, 24 Barbour R., 187; Heywood *v.* City of Buffalo, 14 N. Y., 537, Cooley Cons. and Lim., 77 and 78; Marsh *v.* Fulton Co.. I0 Wallace, 682.

FROM SMITH.

Appeal from the Chancery Court. WILLIAM G. CROWLEY, Chancellor.

HEAD & SONS for Winston.

JAMES W. McHENRY, A. H. LUSK, W. H. DeWITT and EAST, DEMOSS & MALONE for Tennessee & Pacific Railroad Co.

FREEMAN, Judge, delivered the opinion of the Court.

This bill is filed by Winston, and a hundred or more of the taxpayers of Smith County, on behalf of themselves and other taxpayers of said county, to have an order of the County Court of said county declared

void, submitting the question of subscriptions of $300,000 to the Tennessee & Pacific Railroad Co. to a vote of the people of the county, as well as all the proceedings under said order; and also to enjoin the County Court from issuing the bonds of the county for said sum, and the levy of any taxes to pay interest on the bonds, with a prayer for general relief. In short, the object of the bill is to enjoin the subscription, and have it anulled for the reasons set out in the bill, with a perpetual injunction against its collection, or enforcement, as against the county.

Numerous objections are presented to the validity of the proceedings sought to be declared void, which we will notice, as far as necessary for the decision of the case in the subsequent part of this opinion.

At present, the question that meets us at the threshold of the discussion is, as to the jurisdiction of the Court of Chancery to entertain the bill, and grant the relief sought. This question is raised by the 17th ground of demurrer, as filed by defendant. It is as follows: " The Court has no jurisdiction, because there is no law authorizing a contest of such an action in this Court, and the bill on its face shows that the bonds in question have not been called for by the Railroad Company, and fails to show there has been either an issuance of the bonds, or that a tax has been assessed, or effort to levy or assess a tax, to pay the subscription."

The facts necessary to be stated in order to present this question are, that at the November Term of the

County Court, 1869, an election was ordered to be held on the 10th of December, 1869, to determine whether the county would subscribe $300,000 stock in the Tennessee & Pacific Railroad Company, payable in bonds of the county. An election was held accordingly on that day, by the Commissioner of Registration, and on the 15th of that month that officer filed his certificate in the Clerk's office of the County Court, in which he stated that an election had been held in all the districts of the county except one, the eighth—giving the reasons why no election was held in this district, which need not be noticed here—and stating the result of the election to be, that 950 votes had been voted for subscription, and 920 against it. On the 17th, two days after this return by the Commissioner of Registration was filed, the County Judge of the county, one Whitby, subscribed the amount thus voted to the stock of the company. The bill seeks to declare this subscription void, and have the same cancelled, on the grounds that the supposed election did not confer authority to make it, not being conducted according to law, and that the election did not legally result in a majority of the voters of the county voting for subscription, and because there was no election held in the eighth district. Other grounds are specified, but these are enough for our purpose at present.

By Art. 2, § 29 of the Constitution of 1834, it is provided: "The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation

purposes, respectively, in such manner as shall be prescribed by law; all property to be taxed according to its value, upon the principles established in regard to State taxation."

In *Mayor and Aldermen of Nashville* v. *Nichol,* 9 Hum., 252, and *Louisville & Nashville Railroad Co.* v. *County Court of Davidson County et als.,* 1 Sneed, 640, it was adjudged that subscription to a Railroad Company was a county or corporation purpose, and in the latter case, that the question of subscribing for stock in such companies might be submitted to a vote of the people, in accordance with what is known as the Internal Improvement Law of 1852, and the authority given to the county, by the Legislature, to impose such taxes in favor of railroads, be made dependent, for its exercise, on the result of a vote of the citizens for or against the proposition. These questions being settled and assumed as the law, it readily appears that there are elements in such an election not found in the ordinary case of an election to fill an office where two or more citizens submit their claims to the decision of the people. It is not a question simply of who shall fill an office, but a means of ascertaining, and giving expression to, the voice of the people of the county, in assenting to, or dissenting from, a proposed contract into which the corporation, or *quasi* corporation of which they are members, is to enter, but only on condition of assent by a majority of the votes cast, in accordance with the terms of the authority given in the law under which the action of the people is authorized. In short, we

N. C. Winston *et als. v.* Tennessee & Pacific R. R. Co. *et als.*

think it clear that the action of the county in making the subscription to the stock of a company is dependent upon the assent of the prescribed majority, to be ascertained in the manner prescribed by the law for its validity and binding force.

This being so, in any case where the question of the obligation of a contract of subscription is to be settled, because of want of authority on the part of the county to make it, for want of proper assent on the part of the people of the county, the question of the result of what is, by accommodation in the use of terms, called an election, must necessarily be investigated, not under the idea of contesting an election, but for the purpose of ascertaining whether the contract of subscription made has been authorized according to law, and so binding on the county. In this view of the question it will be seen that it is not a question of contesting an election brought into a Court of Chancery, but the question of the validity and obligation of a contract, which by law is made to depend on the assent of the majority of votes given at the ballot box, and as a condition to its being made, and that the result and validity of the election is to be ascertained, in order to determine the question whether a binding contract has been made as to the corporation or county subscribing or proposing to subscribe for stock in the Railroad Company.

On looking at the case of *Louisville & Nashville Railroad Co.* v. *Davidson County et als.,* we think this is the principle on which the Court went, and the true

theory of the case on this question. There were several cases consolidated and heard together in that case. In two of the cases, commenced by a mandamus, to compel the County Court in one case—Davidson County—to levy the tax ratio, and in the other—Sumner County—to issue bonds, the question of the validity of the election as a matter of law, and on the facts was presented, and decided by the Court, in reaching the conclusion, that the subscriptions were binding on the counties. In the case of Sumner County it was insisted the election had been carried by fraud, bribery, etc.—which the Court decided the proof did not sustain—and then go on to say in substance, that if the facts alleged had been proven, they would not have invalidated the election. It was also insisted in that case that the vote was taken before the location of the road, and that the order for the election was made by the Quorum Court, and not the County Court, at their Quarterly Session, with the Justices of the county present. This question the Court decided, as a matter of law, involving the settlement of the question of the validity of the subscription. In the Davidson County case the question was presented, that no election was held in one civil district, and on the admission by the demurrer, the Court decided on the effect of the fact thus alleged. We may add that the case of White County, one of the cases, was a bill filed by taxpayers to enjoin the collection of the tax voted by that county, and was dismissed by the decree of the Court. Now, if the validity of the election in these cases could be decided, incident-

ally, on a mandamus, we can not see on what principle. it may not as well be done on a bill filed like this, to have the subscription declared invalid, and cancelled, as not being authorized under the law. The case of *Blackburn* v. *Vick*, 2 Heisk., 377, is cited for the position, that the election could only have been contested in the County Court. That was of a contest for the office of Revenue Collector. There being no provision by the statute for such a contest, and the County Court, as a court, being required to induct the officer *elected* into office, by taking his bond and administering the oath of office, we held, that in case of contest, that court must decide the question judicially, as to who was elected, in order to the performance of its other duty, of inducting the elected party into office. That case we think properly decided, but does not contravene the views we have announced in this case in any way, as the election is only incidentally attacked here, by way of showing the want of authority to make the subscription. We might cite other cases in support of this view of the question, but we deem this sufficient on this point. It is proper to say, that we do not hold that the correctness of the return of the result of the election might not have been contested in the County Court, that question not being before us, and we express no opinion on it. But admitting the law to be that way, it in nowise militates against the view we have taken of the question and our conclusion.

That a subscription by an incorporated town is dependent upon the approbation of the voters of the

county, to be ascertained by an election; and that by the laws of this State, under which this subscription was made, this is a condition precedent to be performed before a valid contract can be entered into by the county to take stock in a company, is apparent from the Sections of the Code on this subject, which we cite. First, Sec. 1,142 authorizes counties, towns and cities to subscribe for stock. Sec. 1,143 is, "The approbation of the legal voters of the county, town, or city to the proposed subscription, must first be obtained by an election held by the Sheriff in the usual way in which popular elections are held." By Sec. 1,148, it is provided: "If a majority of the legal voters, etc., shall be in favor of the subscription, the Judge or Chairman of the County Court, or the Mayor of the Corporation, shall subscribe the amount of stock so voted for, in the name of the county or corporation.

It is evident from these sections that the purpose of the Legislature was, not to entrust this matter to the action of the County Court, or Justices of the county, the body ordinarily controlling the collection and appropriation of the revenues of the county, but that the people of the county, as a majority, as provided by law, were required to give their *approbation* to such subscription, and this approval "must first be obtained" before any subscription is authorized, is the precise and definite requirement of the law. Without this, a subscription is a contract wholly unauthorized, and of no validity whatever. In fact, we suppose no one would maintain, that without the forms of an

election, and a return by the officer holding the election, or some ascertainment of the result, so as to show that the majority required had been given, a subscription by the Judge, Chairman, or Mayor of a Corporation would be binding. If this be so, the simple question is, whether, in a case like this, it may be shown that no such majority has been given. That this may be done we have no question. We therefore hold, this point of the demurrer is not well taken.

The next point of the demurrer is, that the bill shows that the bonds have not been called for by the Railroad Company, nor issuance of them, or attempt to do so, nor has any tax been assessed to pay the subscription. We need not discuss this objection at length, for we take it to be clear that if the subscription made by the County Judge is unauthorized (as is the theory of the bill), and the contract to pay the bonds to the company for its stock, invalid, then the parties to be affected by such contract need not wait until payment on the contract is actually sought by the company, or till the bonds are issued to the company, or until the money to pay the interest or the principal shall be attempted to be collected by levy of a tax for the purpose. If the subscription contract to pay in bonds for the stock is not binding, then that question can be as well tested before issuance of bonds or application for them, or levy of tax, as afterwards, and there is much reason in favor of having the preliminary question settled before any fur-

ther steps are taken by which the matter might be more complicated; but still the same question remains to be settled, that is, the validity of the contract by which the county had bound itself to the company, and for which the bonds were to be issued and a tax levied.

It is insisted, however, that complainants are not entitled to file this bill, because, as we understand the argument, when the subscription was made by the County Judge, there was a contract between Smith County and the company, and that the taxpayer could only become a stockholder in the company after he has paid his tax assessed against him, and received a certificate of a share of the stock. Conceding the fact to be as stated, does it follow that the complainants, as taxpayers, have no right to come and ask that the contract entered into by the County Judge, binding the county for the payment of the $300,000, shall be declared void, as made without authority. Let us look at this question for a moment. It goes on the theory that the taxpayers are not stockholders in the Railroad Corporation, but that the county, by virtue of the subscription, is, and that the taxpayer, therefore, is not a party to the contract, and therefore can not seek to set it aside. But it must be remembered that while he is not a holder of stock in the Railroad Corporation as yet, he is having a liability fixed on him by virtue of the assumed subscription of the county, by which he may be compelled to pay his money, and be made a stockholder to that extent, or

at any rate be made to pay to the extent of his taxes, and ·it would seem that he is interested, and has the right to see whether this liability has been imposed by authority of law before he shall be called on to pay, or before he does pay. While he is not a stockholder in the Railroad Corporation, he is an integral member of the corporation, or *quasi* corporation of this civil division of the State, known as the County of Smith, and in this case, by virtue of his relation to said county, a pecuniary liability is to be fixed on him, as is the theory of the bill, unauthorized, and in violation of law. It is settled that while counties are for some purposes but civil divisions of the State, yet for others they are corporations, or, in the language of the Court, in case in 1 Sneed, 687, "They are political, aggregate corporations, capable of exercising such powers as they may be vested with by the Legislature." This being so, the question is, whether a member, or class of members of a corporation, can ask the interposition of a Court of Equity to prevent the use of the funds of that corporation to an unauthorized purpose, or to ask that a liability contracted to· be fixed on the corporation, by which he is to be bound to pay his money as an integral part of such corporate body, shall be annulled, as made without authority.

In the case of *Wood* v. *Draper,* 24 Barbour R., 187, the principle is thus stated in the syllabus of the case: "The Court will grant its aid to restrain, by injunction, the imposition of any tax or burthen on the taxpayers of a city contrary to law, on a complaint

filed by any taxpayer, on his own behalf, as well as on behalf of others similarly interested, or on behalf of any corporator of the city having an interest in the corporate property thereof, or on a similar complaint showing an illegal diversion or application of the corporate property. It may be remarked, however, that this case requires the bill to be filed on behalf of complainant and all others similarly situated, but we do not deem this of importance. In this case the bill was filed by the taxpayers, on the ground that they had an interest in the taxes to be levied, as well as those already in the treasury of the city of New York, and that the law which they sought to have declared unconstitutional and void, known as the "Metropolitan Police Bill," involved the payment of large expenses out of the funds of the city for the purposes therein provided, which the complainants insisted would be in violation of their rights, the law authorizing it, as they maintained, being unconstitutional. The Court, after a review of numerous authorities, deduce the rule as we have cited it above, and hold the taxpayer has the right to ask such relief. The principle on which the case goes is, that an unauthorized use of the property of such corporation, or unauthorized liability incurred, or sought to be incurred by the corporation, is a diversion of the common fund from their proper use, and adds to the taxes and burdens of the taxpayer. In the case of *Haywood* v. *City of Buffalo,* 14 N. Y., 534, while it was held in that case, it being an illegal assessment made, that as a general rule the

*certiorari* in that State was the proper remedy to have it declared void, yet that even in that case there are exceptions, as where the matter complained of might lead to irreparable mischief, or to a multiplicity of suits. This last principle, if not the first, would apply with peculiar force to the case now in hand, for if any taxpayer must resist the collection of the tax when assessed and sought to be collected, as seems to be the theory of respondent's argument, then it is easy to see there may be, not only as many suits as taxpayers, but even more—as many suits as there may be assessments, and efforts each year to collect such assessments, until the whole shall be paid, or, it might be, the parties grow weary and retire from the litigation.

We might cite numerous other authorities in support of the propositions laid down, but we think the above sufficient, as the principle meets the approval of our judgment as sound, and in accordance with the well settled relations of both the county and the city. The corporation, as such, so far as it uses the funds or means gathered from the taxpayer, is a trustee, to a certain extent at least, using these funds, or collecting them for purposes authorized by law, and having only authority so to use them, or collect them for such use, as such trustee ought not to be allowed to misapply such funds to an unauthorized purpose, or to create an unauthorized liability upon the individual corporator, so to speak, and when such liability is sought to be created, if it is charged to be beyond the power of the corporation, and this charge can be made good by proof,

then such attempted liability should, on sound principle, be annulled by a Court of Equity, at the suit of the parties to be affected by it.

It is argued, however, by counsel of the company, that the county is a public corporation, and may contract for county purposes, and subscribing for railroad stock is a county purpose, and when the subscription was made it was a contract between the county and the company, which, as we understand the argument, thereby became binding on the county. We need only say to this argument, that by the Constitution the Legislature is empowered to authorize the counties and incorporated towns of the State to levy taxes for county and corporation purposes, but when such authority is given, the county acts under the power conferred by the law, and if an election is required, or other prerequisite, on which the taxes shall be imposed or the liability incurred, then the law must be pursued, and the power exercised in accordance with the statute. In so far as the county shall act beyond and outside of the authority conferred, in any material requirement, it acts without any authority at all in a case like the present. The Legislature chose to make the right to make this contract dependent on the result of an election, to be held as prescribed, and by this requirement the county, as well as the company, are bound. No contract for subscription to a railroad can be valid without such authority, as the law stood at the time this was made.

This brings us to a consideration of some of the

grounds on which it is maintained that this election is invalid, and conferred no authority on the County Judge to make the contract. It is insisted that the County Court had no authority to order the election, because of failure to comply with requirements of Section 1,145 of the Code, which is as follows: Before such application, (that is to the County Court to order an election,) can be made, the *entire* line of the road in which the stock is proposed to be taken, shall be surveyed by a competent engineer, and substantially located, by designating the *termini* and approximating the general direction of the road, and an estimate of the grading, embankment and masonry, made by the engineer under oath, and filed with the application. This section of the Code is taken from the act of 1853–4, ch. 45, § 3. The act of 1852, the general internal improvement law under which the contest was made in the case in 1st Sneed, contained no such provision; therefore the remarks of the Court on the subject of the vote having been taken in that case, before the location of the road, can give no aid in construction of this section of the Code, unless it may point to the reason for the passage of the act of 1853–4. We may fairly assume that there were evils developed under the previous law that this statute was intended to remedy. We, therefore, find its requirements are in terms positive, and some of them imperative in form. Some of those evils are indicated by the statute, in what it requires. First, the substantial location of the road, by designating the

*termini* and the survey of the entire line, and then the estimates to be made by the engineer of costs of grading, embankments, etc. They certainly were; that the people had been called on to vote their approval without a knowledge of the substantial location of the road, and had thus probably been misled to vote for a road, supposing it to run in a direction in which they were interested, when it might afterwards be changed to another location and the parties be thus deprived of the supposed advantages, which had been the motives for their vote of approval. The *termini* is to be fixed. This was an important element in deciding upon the advantages or disadvantages of the proposed road. A road running from or to an unimportant point, in a commercial view, would not be as likely to meet the approval of sensible men as one leading to a commercial center, or opening up a pathway for a large amount of passengers, who would thus contribute to its revenues. The costs of the grading, etc., is required to be estimated by a competent engineer, that it may be seen whether the probable profits and advantages will be commensurate with the outlay of money, and also whether there is a reasonable prospect of the company being able to complete what it has undertaken and promised. In addition to this, these particular items of costs were contemplated to be borne by the people of the counties along the line, as it is seen the section is part of a law providing for elections for this purpose, the State giving aid for bridges, and was supposed enough to

equip the road after the grading, etc., had been completed. It would, therefore, be important that this estimate should be made, in order that the people called on to vote a subscription should be able to make an estimate as to the probable prospect of securing the means along the line to complete the undertaking to the desirable point. We take it that these considerations, with perhaps others, induced the passage of the Section of 1853–4, which is transferred to the Code and quoted above. Could an election be ordered by the County Court without these requirements being complied with? We hold not, most certainly, unless we can maintain the proposition that the Legislative requirement is either a nullity, and may be disregarded, or is merely directory, and so far unimportant, as that it may be held to be valid as a law, but be disregarded in fact, and thus rendered practically void. We do not think the principle of directory statutes can be made applicable to these provisions. They are not matters of form, but of substance. The principle on which courts continue a statute as directory merely, is very well stated by Mr. Cooly, Const. Limit., 77–78 : "Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey which the rights of these interested will not be prejudiced, are not commonly regarded as mandatory, and if the act is performed, but not in time or in the precise mode indicated, it may

be still sufficient, if that which is done accomplishes the substantial purpose of the statute. But the rule presupposes that no negative words are employed in the statute which expressly or by necessary implication forbid the doing of the act at any other time, or in any other manner than as directed." In other words, that the means to the attainment of the end, if in minor particulars be neglected, or not strictly followed, shall not defeat the end, or the result sought by the statute.

Applying these principles to this statute, it is seen that the language cannot fairly be construed as directory to the County Court, but is imperative necessarily. It forbids the application to be made, or rather prescribed, (as a condition of law on which it can be made) until the survey of the entire line has been done, and the other requirements complied with. Its language is, *before* such application can be made the entire line of the road *shall* be surveyed. If this is not done, then by the plain terms of the statute the application cannot, according to the law, be made to the County Court to order an election. If these requirements of the statute can be dispensed with, then the enactment is inoperative practically, the will of the Legislature is disregarded, and the law remains as it was before the passage of the act of 1853–4, and is thus nullified by Judicial construction. We do not think we are authorized to thus disregard the plain requirements of a statute of the State, but on the contrary feel it to be our duty to enforce the

will of the Legislature, according to the true intent and meaning of the language employed. It will be seen that the requirements are, that the entire line of the road is to be surveyed, and the estimates made for the grading, embankments, etc., of the entire line, and this shall be filed with the application. We are, as we have said, not at liberty to disregard this or to hold it merely directory.

These views, we think, are well sustained by authorities, as well as the plain language of the Statute. In the case of *Marsh* v. *Fulton Co.*, 10 Wallace, 682, the question of the validity of a county subscription was before the Supreme Court of the United States. A vote had been ordered to ascertain whether a majority of the voters of the county approved the subscription proposed, in two railroads, one the Mississippi & Wabash Railroad Co., the other the Petersburg and Springfield Co. The former road was then a continuous line running entirely across the State. An amendment was made to the charter, after the vote, which was in favor of subscription, by which the line of road was divided into three divisions, and it had been held that this act created three different corporations, so that the central division, or company, was reduced to a line of about two hundred and thirty miles. On the question of enforcement of the bonds, which had been issued, the Court, Judge Field delivering the opinion, go upon the theory that no contract could be made to bind the county, except as authorized by the law, and that the authority given by the law must be

pursued in order to the validity of the subscription.
He says, "The holder of the bonds was bound in that
case to look to the action of the officers of the county,
and ascertain whether the law had been so far fol-
lowed by them as to justify the issuance of the bonds.
As a matter of course we decide nothing as to holders
of bonds, *bona fide* without notice.    This question is
not before us, and this opinion has no bearing on
that question.    We think the case of a company seek-
ing to maintain the validity of a subscription made to
it, under and by virtue of the authority of an act of
the Legislature, such as ours, would the much more
be bound to see that the law had been complied with
in all its essential requirements, and more especially
in a matter required to be done by such company.
The same principle is clearly the theory of the opinion
in the case of *Louisville & Nashville Railroad Co.* v.
*Davidson County et als.*, 1 Sneed, 680." The Court
say: "No power to levy a tax, appropriate money, or
contract a debt is conferred on a County Court by
this Act.    All this is referred to the people.    The
Court has no discretionary, *quasi* legislative, or judicial
power given to it in any part of the Act.    It is
merely ministerial in every duty required of it.    It is
to receive and file the petition of the railroad directors
or commissioners, to order and make regulations for
elections, receive the return of the Sheriff, and through
their chairman subscribe the stock, and levy and have
the tax collected.    No discretion is anywhere given,
that seems to be studiously avoided by the Legislature.

The Courts are to act under the mandate of the *law*, in carrying out the will of the people, with no more discretion than a Sheriff, or any other ministerial officer has in the execution of a writ, or any other duty assigned to him by law." This being so, we can not hold that a positive mandate of the Legislature as to the survey of the entire line of the road, the making of the estimates, etc., and the filing of the same with the petition to the Court, could be disregarded by the Court, and that when the Legislature had said before an application could be made to have an election ordered, the entire line should be surveyed so that this ministerial agent could make the order of the election, practically saying that it could and would make it without such survey, or the other requirements having been complied with. This is not to obey the law, or exercise a power in accordance with the law, but in disregard of it; in other words, to proceed without the warrant of law, and without the conditions being complied with on which they are authorized to act at all.

On turning to the charter of the Tennessee & Pacific Railroad Co., and amendments to same, we find by Sec. 25 of Act of 1866–7, that the counties and incorporated towns through or contiguous to which the road may be located, are empowered to subscribe for stock, upon a vote of the citizens, to be taken in the manner heretofore provided by law in such cases. By Sec. 11 of the original Act, it will be seen that the company was to be organized, and were em-

powered and authorized to build a railroad, to be "located on the nearest and most practicable route from Knoxville to Nashville, and then from Nashville to Jackson, and from that point to Memphis."

We now proceed to inquire from the proof whether this requirement of the law has been complied with. We find the petition of the President and Directors of the Company, or in their names signed by George Maney, as President, and probably drawn by him, and presented to the County Court of Smith County, at the November Term, 1869, asking that body to order the election. In this it is stated that the company have completed their survey of the entire line from Nashville to Knoxville by a competent engineer, and substantially located the same, by designating the *termini* and approximating the general direction of their said road, and have caused said engineer to make an estimate of the probable cost of the grading; embankment and masonry, and other expenses for the construction of said road, all of which has been done under oath by said engineer, together with a special report of the survey through Smith County, a copy of which, with his affidavit attached, is filed as Exhibit A, and made part of the petition. On looking at Exhibit A, however, we find that it only contains a description of the route from perhaps the town of Lebanon to the house of A. Lewis, 46¾ miles from Lebanon, and 75 miles from Nashville, the beginning point of the route of the road, as it has been built. The estimates of cost are only from Lebanon to Car-

thage, and from thence on to the same point 75 miles from Nashville. We find no evidence of any further survey or estimates as to the entire line filed with the petition, or indeed at any other time, from our examination of the record. In the printed brief of the able counsel who argued the case for the Company, he claims only, that the engineer's report contains a description of "special route through Smith County, on the Carthage route, to a point 46¾ miles from Lebanon, and 75 miles from Nashville," as we have stated. We take the fact to be, that the survey had only been made, the time substantially located and estimates made, only to this extent, or it would have been shown and filed, as it is evident the draughtsman of the petition was familiar with the section of the Code on this question, as he copies its language almost literally in the said petition. Is this a compliance with the requirements of Sec. 3 of the Act of 1853–4, as found in Code, Sec. 1,145? Is this a compliance with the law? We are compelled to say it is not. This must be so, unless we shall hold that a survey of, perhaps, half the line, and estimates of the cost of much less, is the same, and equal to the whole, and as will meet the requirements of the statute. To hold this would be, not to construe the law, but to disregard it in its plain terms, and substitute for the will of the Legislature, expressed in plain and unambiguous language, practically a different rule and different requirement from what they have prescribed. In other words, not to expound and declare the Legis-

lative will as they have expressed it, but to make a law by judicial construction different from the law of that body, and enforce that. This we have no power to do, even if we desired it, and certainly no reasons present themselves why we should do so in this case more than in any or every other case of like kind.

We may add, in support of the general view we have given on the construction of this requirement of the Code, and as illustrative of the argument, that if the County Court had refused to order the election upon the facts shown in the report of the engineer, as filed by the petitioner, with the application for the order of an election, and a mandamus had been filed by the company to compel them to do so, it could scarcely be doubted that the company would have failed in such suit. The answer would have been, that the statute says, in plain terms, that before such application shall be made, the entire line of the road must be surveyed, not simply the line through our county, and the estimates of costs made, and this must be filed with your application for this order. Until this is done, we have no authority by law to make such an order as you ask. Such a defence would unquestionably have been successful. How then can the act of ordering the election be sustained, as authorized to be done, after it has been done? or on what better basis can it stand now than it would have stood before the Court, when the application for such order was made. If the Court could not have made such an order upon the facts presented, for want of authority

given in the law, can an act done without authority of law be rendered the more valid or authorized because it has so been done in a case like the present. We do not think so. We therefore conclude, that the order of the County Court, directing the election to be held, was without authority of law, it being purely ministerial, and is void, and no election could lawfully have been held under the same.

Numerous other questions have been presented and debated.