K. J. MORRIS et al. v. THE MAYOR AND CITY COUNCIL
OF NASHVILLE.

1. MUNICIPAL CORPORATION. Annexation. Election. Jurisdiction. Owners
of property. Owners of property in the territory proposed to be an-
nexed have, prima facie, such interest as entitles them to resort to a
court of chancery to question the validity of a preliminary election
to ascertain the will of the voters of the territory proposed to be an-
nexed, and as such elections are subject to mistake and fraud, in the
absence of provision for other remedy, the jurisdiction of a court of
equity may be invoked for the investigation and determination of the
validity of the election; and the fact that a return of the result of the
election has been made to the city authorities and accepted by them,
and other acts done by the city authorities treating the annexation
as complete, will not preclude relief.

2. SAME. Who are qualified voters. Citizen. Freeholder. The word "citizen,"
as used in the act, is equivalent to resident or inhabitant, and, hence,
no non-resident freeholder had the right to vote; and when married
women had separate estates in realty, their husbands were not, by
reason of that fact, freeholders, and hence legal voters.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court at Nashville.    A.
G. MERRITT, Ch.

N. & E. BAXTER, DEMOSS & MALONE, EAST & FOGG,
SMITH & ALLISON, and DICKERSON & FRAZER for
complainants.

W. K. MCALISTER and JOHN RUHM for defendants.

E. H. EWING, Sp. J., delivered the opinion of the court.

This is a contest between the complainants and the
city of Nashville as to whether certain territory adja-
22—VOL. 6.

cent to the city has become,. or shall become, a part of it, and subject to its control and laws, or not. The case has been very ably and elaborately argued on both sides, and deserves at the hands of this court an elaborate written opinion, and this shall in due time be given. The short time, however, between this and the period at which the court must adjourn precludes us from giving more than a synopsis of our conclusions upon the questions so well discussed at the bar.

By an act of the General Assembly of this State, passed March 23, 1860, it was enacted " that territory adjoining the city of Nashville may be added thereto and included in the corporate limits thereof," as follows, viz. :

Sec. 3. Twelve citizens, freeholders in the territory proposed to be added and included in the corporate limits of the city, shall sign a petition in writing, under their signatures, in which shall be described, by metes and bounds, the particular territory proposed to be added and included, and shall submit the same to the mayor and aldermen and council of said city for consent and approval. If the city authorities aforesaid consent, and a majority of the citizens who are freeholders in the territory consent, then said territory shall become a part of the city of Nashville.

Sec. 4. To test the sense of the citizens who are freeholders in said territory, and obtain their consent, or the consent of a majority of them, an election shall be held at some convenient and public place in said territory, and each citizen who has a freehold in said

territory shall be a qualified voter, and no other shall be. The sheriff of Davidson county shall hold the election; shall give twenty days' notice of time and place and purpose of the election; shall appoint judges and clerks to aid in said election, and shall make a return of the result to said city authorities; and if a majority of the qualified voters be in favor of addition and incorporation with the city of Nashville, then said territory shall become a part of said city.

Early in last year (1880) preliminary steps were taken to add to the city a territory on its northern border by petition presented to the authorities under the above act. It early appeared that there would be strong opposition to the annexation on the part of persons who had, or conceived themselves to have, material interests in conflict with the proposed addition. A bill was filed by these persons in the chancery court to prevent the election. The election, however, was held; was hotly contested, and resulted in the return of a majority in favor of annexation. The result was regularly made known to the city authorities, and thenceforward, as it is claimed by the city, the territory specified in the petition became a part of the city. The city authorities very soon gave evidence of an intention to treat this territory as part of the city, in taking preliminary steps to elect aldermen and councilmen for said territory as a ward added to the city. About this time complainants, who had all along been prominent opponents of annexation, and were, many of them, largely interested in property situated in the district proposed to be added

to the city, filed the bill in this case to enjoin the election of aldermen and councilmen as purposed by the city, to contest the validity of the election, to question on various grounds the right of the city to perfect this addition, if not already perfect, which they denied. The chancellor granted a preliminary injunction. The bill was answered by the city. The bill was amended; the amendment was answered. Much proof was taken and the cause was finally brought to a hearing before the chancellor, who decided against the annexation and made the injunction perpetual against the city. An appeal was taken by the city to this court. This short preliminary statement of the case is *now* given, not pretending to be full or complete, in order that in some degree the points decided may be understood in their relation to what is developed by the record.

The court is of opinion:

1. That the complainants had *prima facie* such a peculiar interest and such rights in regard to the question of annexation as warranted a resort to a court of chancery for their assertion and protection.

2. That the validity of the election, if in its results adverse to their interests, might be questioned by them in that court, and the question thus raised be there determined.

3. That the returns of the officers of the election were not final and conclusive of the correctness of its results.

4. That as this is called an election in the act of March, 1860, and as it has all the features of ordi-

nary elections except canditates for office, and as it is liable to all of the abuses of elections—mistakes and frauds—and as by it and through it the interest of individuals are largely affected, it must have somewhere a revising and correcting power.

5. That, upon the grounds of mistakes and abuses alone at such an election (even in the absence of all charge or proof of fraud), and in view of the general policy of our State, that all contested elections shall be submitted to some authority higher than that of their judges and clerks, and their returning officer, the sheriff, the chancery court would seem to be the most proper depository of this power. This would be especially true since the act of 1878, ch. 97, enlarging the jurisdiction of the chancery court.

6. The jurisdiction assumed by the chancellor under all the aspects of this case to examine and purge the poll lists, was warranted by law.

7. The word citizen, as used in the act of March, 1860, we hold to be equivalent to resident or inhabitant, and that no non-resident freeholders had the right to vote at the election; and this the more because to give it a larger meaning would involve the consequence that the whole territory might have been annexed without an inhabitant having had a vote upon the question.

8. We hold that where married women had estates of freehold to their sole and separate use, free from the control of their husbands, in real property in the territory, the husbands were not thereby freeholders, and therefore not qualified voters; the husband in such

a case having a bare possibility or expectancy of tenancy by the curtesy in his wife's estate, and being not during coverture either tenant by the curtesy initiate or inchoate.

9. That by the return of the result of the vote to the city authorities and their acceptance of the same and by the other acts done by the city before the filing of the bill in this case, the territory proposed to be annexed had not become a part of the city so far as to prevent the intervention of a court of chancery, by way of injunction against the city authorities, from exercising control over it or treating it in any way as within the corporate limits.

The points above decided are conclusive of this case in favor of complainants, it appearing that the votes excluded by this decision give to those opposed to annexation a large majority.

As the points above adjudged are decisive of the case, we deem it unnecessary to decide other questions so ably and learnedly discussed by counsel.

Let the decree of the chancellor be affirmed with costs, and a decree drawn here in accord with this opinion.