O'NEIL *v.* JONES *et al.*

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

J. H. McCartt and Geo. H. Buxton, Jr., both of Wartburg, J. W. Stone, of Harriman, E. R. Bunch, Sr., of Sunbright, Williams & Williams, of Knoxville, for appellant.

Dagley & Joyce, of Wartburg, and Tyree B. Harris, III, and Walker & Hooker, all of Nashville, for appellees.

Mr. Justice Gailor delivered the opinion of the Court.

In the Chancery Court of Morgan County, complainant filed his original bill to enjoin the defendants, who are the County Election Commissioners, from canvassing the votes and certifying the result of a local option election held in the County under the authority of section 16, Chap. 49, Public Acts of 1939, Williams' Ann. Code, sec. 6648.19. A temporary injunction issued on the filing of the bill and the defendants demurred. The demurrer was overruled by the Special Chancellor and the defendants have perfected an appeal to this Court. No separate proceeding to attack the injunction was made, and apparently the injunction has been allowed to remain in force as it was originally granted.

An intervening petition was filed by one J. E. Patching, and he was allowed to become a defendant. A demurrer to this intervening petition was filed by the complainant and sustained by the Special Chancellor. Patching perfected his appeal by filing bond, but has made no assignments of error, so that his appeal is disposed of with the principal case.

A second intervening petition was filed by one N. M. Shattuck and he was allowed to become a party-complainant. Because his petition was filed on the day of the hearing on the demurrer, and in order to avoid delay, the defendants' counsel orally stated their grounds of demurrer to the intervening petition, and a formal demurrer was later filed after the decree had been entered. This was by consent of both parties. The Chancellor overruled the demurrer of the defendants to the intervening petition of Shattuck as one of the "demurrers of the Defendant Election Commissioners." Appellees insist that since the written demurrer was not before the

Chancellor at the time of the hearing, that he could not have acted upon it, and that, therefore, it cannot be considered by this Court on this appeal. However, it appears that the irregularity of the proceeding on the intervening petition of Shattuck was cured by the order formally reciting that it was by consent of all parties. There is no showing that there was any difference between the demurrer formally filed and that orally stated. While it is not to be inferred that we approve the practice, it is, in any event, immaterial to our disposition of the case.

The appellants have made six assignments of error which are:

1. The Special Chancellor erred in overruling the motion of the defendants and the petitioner, J. E. Patching, to dissolve the injunction and in not dissolving said injunction.

2. The Special Chancellor erred in overruling the separate demurrer of Gene Bixton to the bill and in failing to dismiss complainant's bill as to him.

3. The Special Chancellor erred in overruling the demurrer of the three Election Commissioners and in failing to dismiss the bill as to all three of them.

4. The Special Chancellor erred in sustaining complainant's demurrer to the petition of J. E. Patching and in ordering said petition dismissed.

5. The Special Chancellor erred in overruling the demurrer of the defendants to the petition of N. M. Shattuck and in not dismissing said petition.

6. The Special Chancellor should have dissolved the injunction and permitted the Election Commission to go ahead and canvass the ballots and certify the result of the election and it was error on his part in not so holding.

The complainant has made an elaborate and specific motion to dismiss these assignments of error, and clearly this motion must be sustained under the following language of Rule 14, 173 Tenn. 874: "Error Specified How. A statement of the errors of fact or law relied upon to reverse or modify the same, showing specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the appellant, or plaintiff in error, and reference to the pages of the record where the ruling of the court on matters constituting errors of law appears; and in case it is an error of fact, to the pages of the record where the testimony is to be found relied upon to sustain the same."

This leaves the technical record only for consideration by this Court. Consideration of that record, however, is sufficient to determine the real question presented by the appeal, which is thus stated by the defendants: "We have made six special assignments of error but they all boil down to one question; that is, whether or not the complainant has a right, under the law, to enjoin the Election Commission from doing its duty as prescribed by law and to maintain an injunction against it to prevent canvassing the votes and certifying the results of the Local Option election held in Morgan County on the 28th of December, 1946."

Since the prayer for the injunction, the injunction and the order granting it are part of the technical record, they are properly before the Court on the appeal, and we may consider whether the injunction restraining the Election Commissioners from canvassing the vote and announcing the result of the election was proper. The jurisdiction of the Chancery Court to hear the case is not put in issue, nor is the right of complainant to file the bill. He asserts this right not only as citizen and

taxpayer of Morgan County, but on the ground that his property right in his liquor business is jeopardized by the fraudulent election. He is thus within the rule made in *Jared et al.* v. *Fitzgerald et al.*, 183 Tenn. 682, 195 S. W. (2d) 1; *Wright* v. *Nashville Gas & Heating Co.*, 183 Tenn. 594, 194 S. W. (2d) 459; and *Patton* v. *Chattanooga*, 108 Tenn. 197, 65 S. W. 414.

This is not an election contest since it does not involve the right to hold public office, but it arises from a plebiscite where, under Code sec. 6648.19, the defendants have submitted the question of local option to the will of the people. The charge of the bill is that on account of gross fraud and intimidation in the election, there has been no fair expression of the will of the people and that, therefore, the defendants, as Election Commissioners, should be restrained from announcing a fraudulent result which would put complainant out of the liquor business and do him irreparable injury.

There is no Tennessee case cited or that we have been able to find by independent investigation, where the Election Commissioners, under such circumstances, have been enjoined from canvassing the vote and announcing the result. There are several of our cases which make it clear that the Chancery Court has jurisdiction of the cause and may purge the election of fraud. *Catlett* v. *Railroad*, 120 Tenn. 699, 707, 112 S. W. 559; *Lindsay* v. *Allen*, 112 Tenn. 637, 82 S. W. 171; *Morris* v. *Nashville*, 74 Tenn. 337; *Winston* v. *Railroad*, 60 Tenn. 60. There was no injunction in the case of *Catlett* v. *Railroad*, *supra*, but in the last three cases cited, public officers, after the election had been held and the result announced, were restrained by injunction from carrying out the result of the election of popular mandate, either on account of flaws in the authority on which the election was held

'or on the ground that the election was vitiated by fraud and that, therefore, the mandate was spurious and not a true expression of the people's will.

In *Lindsay* v. *Allen, supra,* the question was the removal of the county seat from one town to another. The preliminary injunction which issued on the filing of the bill against certain members of the County Court who were about to move the County seat, was dissolved by the Chancellor when he dismissed the bill, and although this Court reversed the Chancellor's action in dismissing the bill, the injunction was not reinstated *Lindsay* v. *Allen,* 112 Tenn. 663, 82 S. W. 171. In *Morris* v. *Nashville, supra,* the question of annexing certain territory to the City of Nashville had been submitted to the vote of the people in the new territory. A hotly contested election had showed an apparent majority in favor of the annexation: "The city authorities very soon gave evidence of an intention to treat this territory as part of the city, in taking preliminary steps to elect aldermen and councilmen for said territory as a ward added to the city." *Morris* v. *Nashville,* 74 Tenn. 337, 339.

It was the action, or threatened action, of the city authorities to carry out the annexation that was enjoined by the Chancellor and affirmed by this Court.

In *Winston* v. *Railroad, supra,* the question of a subscription by the County to defendant Railroad's stock had been submitted to the voters of Smith County, and on the face of the election returns a majority had favored the subscription. Alleging fraud in the election, the complainant secured an injunction of the Railroad and the County Court from carrying out the mandate of the fraudulent election. This Court sustained the jurisdiction of the Chancery Court to hear the cause, and also apparently the action of the Chancellor in granting the

injunction, though nothing is said of the injunction in the final disposition of the case by this Court.

From this review of all the Tennessee cases cited by the appellee to support the Chancellor's action in granting the injunction of the Election Commissioners, it will be seen that none of them is authority for that action. In every case where the injunction was approved, the injunction had issued after the election was an accomplished fact and the result had been announced. The injunction was granted to restrain officers who were acting or threatening to act against the property rights of the complainant under the authority of the popular mandate which the complainant, to secure the injunction, alleged to be void or fraudulently obtained.

The rule that the Chancery Court will not enjoin an election is inclusive, and applies not only to the actual holding of an election, but to any of the steps in the proceeding, "looking to or pertaining to an election." Pomeroy, 1919 Ed., secs. 1753 and 1755; *Payne* v. *Emmerson*, 290 Ill. 490, 125 N. E. 329.

"In general, in the absence of some specific reason, such as the holding of an election without apparent authority of law, on questions affecting personal or property rights and involving the expenditure of funds other than the cost of the election, the courts have declared that they have no power to enjoin the holding of elections. In a great number, perhaps a majority, of the cases in which the question of the power of the court to enjoin the holding of an election has arisen, it has been held that the court has no jurisdiction to issue such injunction on the ground that the determination of matters by an election is a purely political matter, involving political rights as distinguished from civil or property rights. An injunction has also been denied in a number of cases

on the ground that the petitioner had an adequate remedy at law to protect his rights if the election was illegal.

.   .   .   .   .   .   .

In some cases the decision of the court to take or not to take jurisdiction to enjoin the holding of an election has been said to turn upon the question whether or not irreparable injury or damage will result to the plaintiff if the relief is not granted. *While no actual decision has been found holding that on the facts the petitioner was entitled to the injunction because of the irreparable damage which would result to him from the holding of the election,* there are several cases denying the injunction because of his failure to show that he would be irreparably damaged." (Our emphasis.) 18 Am. Jur., Sec. 117, pp. 254-255.

██ The canvass and announcement of the result is an inseparable and integral part of holding an election. *McAlister* v. *State,* 96 Okl. 143, 221 P. 779; *Winder* v. King (Tex. Com. App.), 1 S. W. (2d) 587, and in a recent case this Court held that an injunction of officers to restrain them from holding an election was beyond the power of the Chancellor because the power to hold an election is a political power and a Court of Equity has no jurisdiction to restrain officers entrusted by law with the duty of holding elections from exercising that power. *Buena Vista Special School Dist.* v. *Bd. of Election Com'rs,* 173 Tenn. 198, 201, 116 S. W. (2d) 1008.

Appellee admits that the judgment in *Adcock* v. *Houk,* 122 Tenn. 269, 122 S. W. 979, denying the right to enjoin the Election Commissioners is adverse to his contention, but he insists that since that case was an election contest of which the Chancery Court had no jurisdiction, that it is distinguishable from the case here. Denial of the

right to enjoin the Commissioners is disposed of in the following language: "The decree of the chancellor was correct, and must be affirmed. The chancery court has no power to enjoin election officers from issuing a certificate of election, or restraining public officers from assuming their functions, even though it be alleged that there was fraud in the election sufficient to vitiate it." *Adcock* v. *Houk*, 122 Tenn. 269, 274, 122 S. W. 979, 980.

It will be seen that no reason is given in the opinion for the denial of the right to enjoin the Election Commissioners, but the authorities cited in support furnish the reason, and the reasons are as valid for the denial of the injunction in the present case as in "election contests." 22 Cyc. 1886; 10 Am. & Eng. Ency. of Law, 817, 818; High on Injunctions, secs. 1312, 1316. High on Injunctions was cited to support the denial of the right to enjoin in *Buena Vista Special School Dist.* v. *Bd. of Election Com'rs*, 173 Tenn. 198, 201, 116 S. W. (2d) 1008.

Aside from the Tennessee cases considered, *supra*, the only case cited by the appellee to support the injunction, is that of *Marsden* v. *Harlocker*, an Oregon case, reported in 48 Or. 90, 85 P. 328, 329, 120 Am. St. Rep. 786. The case is very similar on the facts. Certain retail liquor dealers whose business was jeopardized by an alleged fraudulent election under a local option statute, filed a bill and sought to enjoin the County Commissioners from enforcing the mandate of the people evidenced by the result of the election. Apparently the County Commissioners served in a dual capacity, both as Election Commissioners and as Law Enforcement Officials. It is not clear from the opinion, whether the County Commissioners were enjoined as Election Commissioners or as Law Enforcement Officials, but we think that it is a fair inference that they were not enjoined as Election Com-

missioners because the case of *Robinson* v. *Wingate*, 36 Tex. Civ. App. 65, 80 S. W. 1067, is cited and approved by the Oregon Court in the course of its opinion. The *Texas Case* is substantially identical with the case here and the denial of the right to enjoin the Commissioners of Election from canvassing the returns in a local option election is strongly stated and based on general authority, including High on Injunctions, *supra.*

In 43 C. J. S., Injunctions, section 115c, it is said: "As a general rule election officers will not be restrained from canvassing the vote, declaring the result, and giving a certificate of election."

"Even where complainant's property or pecuniary rights would be affected by the canvass and declaration of the result, some decisions have held that the rule applies (citing *Vickery* v. *Wilson*, 40 Colo. 490, 90 P. 1034); but other decisions limit the rule and allow an injunction in such cases (citing *Morgan Park* v. *Chicago*, 255 Ill. 190, 99 N. E. 388, Ann. Cas. 1913D, 399)."

Examination of the opinion in the *Morgan Park Case* shows that it is no authority for an injunction of Election Officers to restrain them from canvassing returns: "The judge of the county court and other officials canvassed the returns of the election, and declared the result to be in favor of the annexation. The city took possession of some of the property of the village and assumed to exercise jurisdiction over the territory of the village as a part of the city. The village filed its bill in the circuit court of Cook County *against the city, praying for an injunction restraining the city* from seizing and carrying away property of the village or assuming authority to exercise jurisdiction over the property affairs of the village, and to control the government of its territory."

(Our emphasis.) *Morgan Park* v. *Chicago*, 255 Ill. 190, 99 N. E. 388, Ann. Cas. 1913D, 399.

Again it will be seen that the injunction ran against the City of Chicago to restrain its officers from carrying out the mandate of the people evidenced by the election. There was no injunction of Election Commissioners.

From this review of authorities, both from Tennessee and other states, we are forced to conclude that the injunction of the defendant Election Commissioners to restrain them from canvassing the votes and announcing the result of the local option election, was improper. The injunction was premature and as public officials, the defendant Commissioners are entitled to a presumption that they will legally discharge the duties of their office. Further, we do not find that canvassing the votes and announcing the result of the election would work irreparable damage to the complainant; he has the undoubted right, if and when the law enforcement officers seek to carry out the mandate of the alleged fraudulent election against himself and his business, to secure an injunction under the authority of *Morris* v. *Nashville, supra,* and *Winston* v. *Railroad, supra;* and indeed the weight of authority is to the effect that this was his proper and only course. *Thompson* v. *Mahoney,* 136 Ill. App. 403, 406; Lewis & Spelling Law of Injunctions (1926 Ed.), p. 503, where many cases, including *Adcock* v. *Houk, supra,* are cited and considered.

The injunction is dissolved and the cause remanded for further proceedings consistent with this opinion. The parties will divide the costs of the appeal and costs of the Chancery Court will be assessed by the Chancellor in his final decree.

All concur.