SEEBER *v.* WATLINGTON *et al.*

(*Knoxville,* September Term, 1950.)

Opinion filed June 16, 1951.

522

WALTER E. FISCHER, of Clinton, for complainant.

HOBART F. ATKINS, of Knoxville, for defendants.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The appellant in his brief states the question involved as follows: "When a local option referendum is conducted pursuant to Code Section 6648.19 of the Code of Tennessee, does the County Judge have a right to bring an action against the Board of Commissioners of Elections for the purpose of reforming the returns of said election as certified to him by the Election Commissioners, where the certified returns are false due to mistake, fraud,

and the violation of the election laws of the State of Tennessee?''

The original bill was filed by the appellant, T. L. Seeber, in his official capacity as County Judge for Anderson County, Tennessee, against the defendants as members of the Anderson County Board of Commissioners of Elections. The purpose of the bill was for reformation of the return of a local option liquor election by the defendant Commissioners to the County Judge who is the proper recipient of the return under Code Section 6648.19. The bill alleges various and sundry fraudulent acts in the conduct of the election and specifically alleges that in one precinct the vote at the close of the election, when canvassed, was 914 for liquor and 38 against, while the return as reported by the defendant Commissioners was 203 more votes in favor of liquor than were totalled at the close of the polls. In this precinct it is also alleged that these votes were added and names written on the sheets after the polls closed, that is, these extra 203 votes. It is further alleged that in another precinct the dry vote was 181 votes cast for the drys and only 52 votes were cast for the wets, yet when these votes were counted by the defendant Commissioners the tally sheet had been removed from the box, and there being no tally sheet there, the defendant Commissioners did not report this vote at all. It is averred that if these votes were counted, that is, of this missing precinct and the 203 votes that were claimed to have been added after the polls closed in the other precinct mentioned plus other fraudulent acts, then that the election would have resulted in favor of the drys rather than in favor of the wets, the wets winning by only approximately 160 votes. This is the sum and substance of the bill though it does take up at length various and sundry other lawsuits that were

filed by one faction or the other pending and immediately after this election in which the ballots after the election were ordered turned over to the County Court Clerk; and that the Election Commission due to certain court orders did not count these votes or make their return until many days after they are required to by statute.

In addition to the reformation prayed by the bill it was also prayed in the alternative that the election be declared so fraudulent and illegal as to render the whole election void. The primary basis for this allegation was the allegation that some 600 bogus poll taxes had been distributed; that many Negroes were brought from Knoxville and voted in Anderson County that had no right to vote there; and that people were paid various and sundry prices including a pint of liquor for a vote.

The defendants demurred to the bill on various grounds all of which may be boiled down to three questions: (1) Is this an election contest? (2) Can the complainant, as County Judge, maintain this suit? (3) Are the defendants proper parties defendant?

The Chancellor overruled questions (1) and (2) and sustained question (3), that is, the Chancellor held that this was not an election contest and that the complainant in his official capacity as County Judge might maintain the suit but that the defendants were not proper parties defendant.

■ We are satisfied without going into any discussion of the matter that the Chancellor was correct in his ruling on question (1), that is, that this is not an election contest. This Court has recently, in the case of *O'Neil* v. *Jones,* 185 Tenn. 539, 206 S. W. (2d) 782, 784, 1 A. L. R. (2d) 581, had before it a somewhat analogous case. This Court in that case said: "This is not an election contest

since it does not involve the right to hold public office, but it arises from a plebiscite where, under Code section 6648.19, the defendants have submitted the question of local option to the will of the people.''

In this case the Court at page 544 of 185 Tenn., at page 206 of 782 S. W. (2d) cites many previous Tennessee cases as authority for this holding. The reasoning of the Court in *Winston* v. *Tennessee & P. Railroad Co.,* 60 Tenn. 60, rather clearly sets out why this is not an election contest. Though this is a different proposition than that involved in the Winston case, clearly the two propositions are analogous. We therefore see no reason why we should again go into the question of whether or not the instant suit is an election contest. Our conclusion therefore is that the Chancellor was correct in his conclusion on question (1) as posed.

██ Question (2) has given us more concern because in the first place we have nothing in this State on the question so far as we can find by a rather diligent and independent search on the part of the Court nor have we been cited to any authority by counsel that is controlling under the facts of the instant case. The question of course that we refer to is, has the County Judge in his official capacity the power and right to bring this action? The statute under which he receives the returns of this local option election (6648.19) merely makes ''the County Judge or Chairman of the County Court'' the recipient of the returns of this local option election. The statute otherwise as to these elections is that the same laws that are applicable to any election are applicable therein. Does the fact that the County Judge as such, is the recipient of these returns give him the right to question the returns of the Election Commission when there is

nothing else in the Code, insofar as we know, in reference to the matter except the provision above referred to which makes the County Judge the recipient of these records. The County Judge under such circumstances acts merely in a ministerial capacity. The act which he performs is done without the exercise of discretion or judgment and it is only to lodge the official returns of the defendant Election Commissioners. This act consists merely in the duty to lodge and keep these returns because the County Judge is enjoined by law to do so. In accepting these records and keeping them the County Judge acts pursuant to this statute without regard to, or the exercise of, his own judgment or propriety of the acts done other than the mere formal acceptance of these returns and properly filing them in his office. This duty in thus receiving these records and keeping them and this responsibility are ministerial. There is no room for the exercise of discretion or of judgment, except in the minor details of performance. The returns by the Election Commissioners "are quasi records, and stand with all the force or presumptive regularity and prima facie integrity, not only till suspicion is cast upon them, but until their self authenticated verity is overcome by affirmative proof that the returns do not speak the truth." McCrary on Elections, page 440.

The County Judge issues no license by reason of these returns being filed with him. He takes no affirmative action following the certification of the results to him. The Code imposes no other duties upon him. The certificate when filed with him puts the mandate of the people in action. Insofar as we know under the authority given by statute and code to the County Judge there is no authority under such circumstances for the County

Judge to bind the credit of the County or to authorize the employment of counsel or to bring suit to question the verity of the returns made by the Election Commissioners who in making their return also act in a ministerial capacity. If the County Judge were authorized to bind the County and thus act in his official capacity without authorization of statute or the direction of the County Court then it would be entirely possible for him to bind the County to untold amount of fees and costs incident to the bringing of an action of the kind. This Court at various and sundry times has had before it the question of the authority of the Chairman of the County Court or the County Judge to employ counsel to defend suits against the County. This Court in *State* v. *True,* 116 Tenn. 294, 95 S. W. 1028, held among other things that "The chairman of a county court has no authority to bring suit for the county, nor to employ counsel for such purpose, for such power is vested solely in the quarterly courts; and his power to employ counsel is confined to cases where the county is sued, without power to fix the fee, which must be fixed by the court trying the case." 3rd Headnote, *State* v. *True,* supra. This holding has been subsequently followed by this Court and seems to us to be based on good reasoning. If the County Judge, officially, had authority thus to bring suit and bind the County for costs by reason of bringing this suit he would certainly, if that were true, have a right to employ counsel to bring the suit. Under the authority of *State* v. *True,* supra, and others before and subsequent thereto, we think clearly that the County Judge was without authority in the present case.

It is our thought, therefore, that the County Judge in his official capacity had no right to bring this action

and the ground of the demurrer going to this feature of the bill must be sustained and the bill dismissed. Under the authority of *State* v. *True,* supra, the costs of the case must be taxed against T. L. Seeber, individually and the official sureties on his bond.

All concur.