**LAKE COUNTY, Tennessee and Reelfoot Lake, Tennessee Regional Planning Commission, Plaintiffs/Appellees,**

v.

**Ellis TRUETT, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

March 15, 1988.

Application for Permission to Appeal Denied by Supreme Court July 18, 1988.

John W. Palmer, Palmer and Palmer, Dyersburg, for defendant-appellant.

William B. Acree, Jr., Elam, Glasgow, Tanner and Acree, Union City, for plaintiffs-appellees.

TOMLIN, Presiding Judge, Western Section.

Lake County (hereafter "Plaintiff")[1] filed suit in the Chancery Court of Lake County seeking injunctive relief against Ellis Truett (hereafter "Defendant"), a real estate developer in that county. It was alleged that Defendant had failed and refused to comply with certain regulations and state statutes relative thereto in the development of a subdivision. Following a bench trial, the chancellor enjoined Defendant from selling any residential lots that did not comply with Lake County's subdivision regulations and in addition, ordered Defendant to take steps to comply with the subdivision regulations applicable to his subdivision which was under development. By this appeal Defendant presents three issues: (1) Had the subdivision regulations which Plaintiff sought to enforce against Defendant been duly and properly adopted by Plaintiff? (2) Was the Plaintiff autho-

---

1. Lake County was the original plaintiff. The complaint was later amended to add Reelfoot Lake Planning Region as an additional plaintiff. We find it less cumbersome to refer to the plaintiff as "Lake County."

rized to file this suit against Defendant? (3) Did Plaintiff engage in the discretionary and discriminatory application of these regulations so as to estop it from applying them to Defendant? For the reasons set forth hereafter, we modify the action of the chancellor below.

Virtually all of the evidence is undisputed. The only proof presented by Defendant was some brief testimony by the county court clerk pertaining to items showing the budgeting of county funds for the payment of legal expenses. The Defendant did not testify at trial.

Pursuant to statute, the State Department of Economic and Community Development is empowered to create and establish planning regions throughout the state. The planning region may consist of a single county, two or more contiguous counties or parts thereof. The Reelfoot Lake Planning Region was established in March, 1961. A resolution creating the planning region was adopted shortly thereafter. To carry out the functions of a planning region, the enabling act calls for the formation of a planning commission within the region. The guidelines and procedures for the formulation of planning regions, the creation of the planning commission, the development of a regional plan and the creation of regional planning regulations are governed by T.C.A. §§ 13–3–103 through 13–3–411. The powers and functions of the regional planning commission are prescribed in § 13–3–104. Such commissions are given broad powers: "In general, the commission shall have such powers as may be necessary for it to perform its functions and to promote regional planning." T.C.A. § 13–3–104(d).

Following the statutory requirements, zoning ordinances for Lake County were adopted in January, 1962 and a major road plan was adopted by Lake County in February, 1963, subsequently being recorded in the register's office of that county. Subdivision regulations for the county were adopted in April, 1963.

Coincident with the passage of legislation pertaining to the establishment of planning regions and the creation of regional planning commissions, the General Assembly enacted legislation establishing an agency to provide expert technical assistance to the cities and counties of this state that established a planning region. Regional offices known as Local Planning Assistance Offices were established. Such an office is located in Jackson. The personnel in that office serve most if not all of the rural counties in West Tennessee.

Insofar as Lake County is concerned, the Local Planning Assistance Office ("LPO") provides a variety of services. Generally speaking, the LPO works with the towns and counties in its region under a contractual arrangement, serving as staff planners. In addition to giving planning advice, the LPO assists in long-range planning, drafting and adopting of subdivision regulations, zoning resolutions, major road plans, and with any subsequent amendments thereto. It is a part of the function of the LPO to have staff members attend the meetings of the regional planning commissions and assist in such minute details as the preparation of an agenda, providing technical and professional assistance in reviewing subdivision plats submitted for consideration, evaluating petitions to rezone and the submission of professional recommendations concerning such matters. In essence, the LPO is designed to serve as a complete support staff to the various regional planning commissions within their jurisdiction.

The Reelfoot Regional Planning Commission was established by the same resolution that created the Reelfoot Lake Planning Region in 1961. Members of the commission were appointed at that time. Defendant's land where the subdivision in question is located was brought within the jurisdiction of the Reelfoot Lake Planning Region by an enlargement of the planning region's boundaries in March, 1968. The concepts of "planning" and "zoning" were relatively new to the rural counties of Tennessee twenty-five years ago. Such was the case in Lake County, one of the more rural, agricultural counties of West Tennessee.

The documentary records of Lake County concerning the growth and development

of the Reelfoot Regional Planning Commission until recent years are scarce at best and sometimes nonexistent. Much of the documentation of the adoption of the various regulations, zoning plans, etc. was furnished by the LPO in Jackson. For instance, there is no record of any type relative to any activity of the planning commission from its creation in 1962 to 1975. If there were meetings and if minutes were kept, no one was able to find and produce them. The records of the LPO in Jackson reflected that from 1975 through 1980, the planning commission did not meet. In 1981, it met three times; in 1982 it did not meet; and in March, 1983, sparked by the election of a new county executive the previous year, the planning commission was reactivated.

Following its reactivation, the commission has met almost monthly. Ms. Lynn McCaleb testified that she had been a staff planner with the LPO for some five and a half years at the time of trial, and that she had served as staff planner for Lake County since April, 1984. In addition to conducting an education process for the members of the Reelfoot Regional Planning Commission and other officials of Lake County, she provided professional assistance to the planning commission in the revision of its subdivision regulations and updating the major road plan, which was recorded in January, 1986. She testified that there were no major changes in either documents that affected defendant.

Following the educational process referred to above, Ms. Sparks gave the members of the commission a thorough briefing on the enforcement provisions of the zoning, planning and subdivision regulations. In addition, during the period 1985 to 1986, all relevant organizations in Lake County were briefed on their roles in land planning.

Inasmuch as Defendant did not testify in his own behalf, there is but little evidence concerning his involvement in this affair. He is known to be a resident of Lake County and has been for some years. He has developed residential property in the past in Lake County. The subdivision in question is known as the Magnolia Harbor North. It was the only subdivision in the process of development at the time the educational process of the rejuvenated planning commission was taking place.

Before addressing the crux of the problem and Defendant's involvement, it would be helpful to review the proper procedure for platting a subdivision. While this outline may not be as technically accurate as the subdivision regulations, themselves, it will give the reader a picture of the general procedure to be followed. A subdivider of residential property, in the event a subdivision is to contain two or more lots less than five acres in size, is required to have the property platted by a surveyor or engineer. Among other things, the plat is to reveal the shape, size and location of the lots, the location and sizes of the streets, and the provisions for sanitary sewer and water. A plat called a "preliminary" plat is required to be presented to the planning commission for consideration and approval. It is permissible under certain conditions to sell lots from a preliminary plat, but no building permit may be issued until final approval is obtained.

A plat known as a "final" plat ultimately is required to be submitted to the planning commission by the developer. This final plat is to accurately represent on paper the physical facts as depicted in the subdivision. Prior to being submitted to the commission, the final plat must be submitted to officials of the county highway and health departments, who are required to "sign off" on the plat, indicating that adequate and proper sanitary facilities are either in place or are contemplated, and that the type of construction of the street or streets contemplated are approved by the highway department. At the time the final plat is submitted to the regional planning commission for final approval, all such improvements must either be in place or the developer must submit a proper bond in favor of the county in such an amount as to guarantee the construction of all of the required improvements. If these and other conditions are met, the planning commission approves the final plat, which means that the plat can be recorded in the register's office

of the county and the sale of lots in the subdivision can begin.

Insofar as Magnolia Harbor North was concerned, Defendant caused to be prepared and recorded at different times three virtually identical plats. The plats reflected that some nine lots were being platted, with substantially more contemplated for future development. The property is triangular in shape, with lots on one side of the triangle fronting on a public road. This appears to be the first part contemplated for development. The remainder of the lots front on roads platted within the subdivided property. The first plat was recorded in March, 1984; the second, labeled "revised," in June, 1984; and the third and final plat in September, 1985. The first plat bore the signatures of the chairman and two members of the "Reelfoot Planning Commission" as did the second of the two plats. The third plat bore the signature of the then secretary of the planning commission. Neither of the first two plats contained certificates of approval of the streets and water and sewer systems. The third plat contained blank certificates that were not filled in or executed. None of the three plats had ever been submitted to a meeting of the Reelfoot Regional Planning Commission for approval. Both members of the planning commission who signed the first two plats testified that they did so in ignorance, that they were not aware of the planning commission's subdivision regulations, and that they would not do it again. The members signed the plat after Defendant brought it to them for their signatures at their respective places of business. The sole signature on the 1985 plat was the secretary of the planning commission. He was not aware of the regulations when he signed the first plat. As for the September, 1985 plat, he testified that he was told by both the Defendant and the surveyor that it was necessary for him to sign it before the plat was brought before the planning commission. The Defendant never brought this plat before the commission.

The problem came to a head in the following manner: A couple bought a lot in the subdivision from Defendant. The owner subsequently applied to the building inspector, also a member of the planning commission, for a building permit. This was done by the owner's contractor. The building inspector, ignorant of the fact that the lot was located in Magnolia Harbor North subdivision, issued the permit. After construction began in the summer of 1985, the owner approached the utility district, seeking sanitary sewer service for the residence. The director of the utility district refused on the grounds that the lot was in a subdivision the plat of which had not been submitted to the planning commission for approval. The Olehausens (the owners) went to the planning commission in October, 1985 and stated their case. This incident brought to the planning commission's attention the problems they were facing with Defendant's subdivision. The Olehausen lot had as one boundary a public street. They later filed suit against the utility district which was required by court order to provide a special sewer service to the Olehausens.

The Defendant was present at the meetings of the planning commission in both October and November, 1985. On each occasion he was advised of the requirements for the approval of his subdivision. The commission even offered to phase in the improvements, providing services for the eight or nine lots already platted, but withholding work on those sections designated for future development unless some sort of bond was offered by Defendant. There was no response from Defendant. In December, 1985, the chairman of the planning commission wrote Defendant a letter, advising him that the Magnolia North subdivision was an illegal subdivision inasmuch as he did not follow the subdivision process. The letter outlined the procedure that was to be followed in order to bring the subdivision into compliance with the commission's regulations. A copy of the regulations were included. Again, there was no response. Following the commission's meeting of January 22, 1986, a second letter was written to Defendant, recounting the provisions of the December, 1985 letter. Defendant was ad-

vised that inasmuch as he had not responded to the commission's request to comply with its regulations, he was being given until February 26, 1986 to take steps to comply. He was also advised that failure to do so would trigger legal action on the part of the county. Defendant again failed to respond, and this suit ensued.

## I. ADOPTION OF THE SUBDIVISION REGULATIONS.

■ Defendant contends that the subdivision regulations sought to be enforced by Lake County had not been duly adopted, and thus could not be enforced against him. This contention is without merit. Defendant offered no proof in support of this position. Defendant has presented no law in support of his position. On the other hand, a representative of the West Tennessee Local Planning Assistance Office in Jackson testified that records on file in that office that were prepared by staff members who assisted in the development of the Reelfoot Lake Planning Region and its regulations reflected that the planning commission, having been duly created, adopted the subdivision regulations in February, 1963, and that they were subsequently approved following a public hearing in April, 1963. Ms. McCaleb, the staff planner who had been working with Lake County since April, 1984, testified that she was familiar with the subdivision regulations of Lake County, and that they were in effect when Defendant began to develop the Magnolia Harbor North subdivision. There was corroborating testimony from other witnesses as well.

Notwithstanding the fact that the then current members of the planning commission were unable to find copies of the minutes of the meeting of the planning commission itself wherein the subdivision regulations were adopted and approved, in our opinion the evidence does not preponderate against the finding of the trial court that the regulations in question had been duly adopted and were in full force and effect at the time the Defendant admitted he failed —or refused—to comply with them.

## II. AUTHORITY TO SUE; RIGHT OF ENFORCEMENT.

■ Defendant likewise contends that this suit against him was not properly authorized. The argument would thus follow that if the suit were not properly authorized, then Lake County would not have the right to enforce the subdivision regulations against Defendant. It is uncontradicted that the legislative body for Lake County did not authorize this law suit by an appropriate resolution. Once it had been determined that Defendant had caused plats of a subdivision to be recorded illegally, that he had failed or refused to comply with the subdivision regulations, and that he had sold lots from these recorded plats contrary to law, the County Executive of Lake County authorized the bringing of this suit. The record reflects that the Lake County Attorney had a conflict of interest and could not represent the plaintiff. Inasmuch as the budget allocated funds for legal expenses, the County Executive employed private counsel to represent Lake County.

In substance, the complaint as filed alleged the development of Magnolia Harbor North by Defendant without compliance with the subdivision regulations of the county. The complaint stated that some seven lots had been sold by Defendant from a plat that had been illegally recorded, and that Defendant had violated certain state statutes pertaining to the development and regulation of subdivisions in this state. It stated that the action was being filed to protect the rights of property owners in the subdivision. Lake County, by this action, sought injunctive relief in two respects: First, to enjoin the further sale of lots by the Defendant until he complied with all of the applicable regulations pertaining to subdivisions in that county; and second, it sought an injunction requiring Defendant to "take the steps necessary to bring the lots in said subdivision in compliance with applicable law, including a requirement that the Defendant furnish purchasers, both present and future, of said lots with utility facilities and streets." The chancellor granted the relief sought, ruling as follows:

The defendant is hereby enjoined from selling any lots which are not in compliance with the subdivision regulations, and is ordered to cause the proper work to be done to comply where lots may already have been sold and post a bond to guarantee that the work will be done as he sells the lots.

A reading of the enforcement provisions of the subdivision regulations of Lake County reveals that they primarily track the enforcement provisions of the state statutes pertaining to regional planning. It is appropriate that we look at the relevant statutes to determine what these enforcement and penal provisions are. T.C.A. § 13–3–302 states that the general purpose of regional development plans is to "best promote the health, safety, morals, order, convenience, prosperity and welfare of the inhabitants, as well as efficiency and economy in the process of development...."

T.C.A. § 13–3–402 states in part that after a regional planning commission has adopted a regional plan that includes a major road plan and shall have filed a copy of the major road plan in the county register's office (as had been done in this case),

> then no plat of a subdivision of land within such region, other than land located within the boundaries of any municipal corporation, shall be filed for record or recorded until it shall have been approved by such regional planning commission and such approval be endorsed in writing on the plat by the secretary of the commission....

The authority of a regional planning commission to control subdivision development is found in T.C.A. § 13–3–403, which states in part:

> (b) Such regulations may include requirements as to the extent to which and the manner in which roads shall be graded and improved and water, sewer and other utility mains, piping, connections or other facilities shall be installed as a condition precedent to the approval of the plat. The regulations or practice of the commission may provide for the tentative approval of the plat previous to

such improvements and installation, but any such tentative approval shall not be entered on the plat. Such regulations may provide that, in lieu of the completion of such work and installations previous to the final approval of a subdivision plat, the commission may accept a bond, in form and amount and with conditions and surety satisfactory to it, providing for and securing to the public the actual construction and installations of such improvements and utilities within a period specified by the commission and expressed in the bond.

T.C.A. § 13–3–406 states that when the platting jurisdiction of a planning commission of a region shall have attached,

> [f]rom and after the time when the platting jurisdiction of any regional planning commission of any region shall have attached by virtue of the making and adoption of a major road plan ... no county or court or board or officer thereof or any other public officer or authority shall accept, lay out, open, improve, grade, pave or light any road or lay or authorize water mains or sewers or connections or other facilities or utilities to be laid in any road located within such region and outside of the boundaries of municipal corporations, unless such road shall have been accepted or opened or shall have otherwise received the legal status of a public road prior to the attachment of the planning commission's jurisdiction or unless such road corresponds in its location and lines with a road shown on a subdivision plat approved by the planning commission or on a road plat made and adopted by the planning commission....

T.C.A. § 13–3–410 covers the penalties for transferring lots in what are considered to be unrecorded subdivisions. It reads as follows:

> **Penalties for transferring lots in unrecorded subdivisions**—Whoever, being the owner or agent of the owner of any land, transfers or sells or agrees to sell or negotiates to sell such land by reference to or exhibition of or by other use of a plat of subdivision of such land without having submitted a plat of such subdivi-

sion to the regional planning commission and obtained its approval as required by this part and before such plat be recorded in the office of the appropriate county register or who falsely represents to a prospective purchaser of real estate that roads or streets will be built or constructed by a county or other political subdivision, shall be deemed guilty of a misdemeanor, punishable as other misdemeanors as provided by law; and the description by metes and bounds in the instrument of transfer or other document used in the process of selling or transferring shall not exempt the transaction from such penalties. Provided, however, the owner or agent of any land may sell, transfer or agree to sell any lot or lots shown on a plan having been given tentative approval by the regional planning commission; and provided, further, the owner or agent post bond in form and amount and with conditions and surety satisfactory to the regional planning commission, providing for and securing to the public the actual construction and installation of such improvements and utilities within a period specified by the commission and expressed in the bond. The county, through its county attorney, or other official designated by the county legislative body, may enjoin such transfer or sale or agreement by action or injunction.

Finally, T.C.A. § 13–3–411 states in substance that no building permit or certificate of compliance shall be issued for or no building or structure shall be erected on any lot within the planning commission's jurisdiction unless the street providing access to the lot has been accepted or opened as a public street. A building erected in violation of this section is considered to be an unlawful building, and the county building commissioner or county attorney is empowered to bring legal action to enjoin the erection of such a building or cause any illegally built building to be removed.

■ The authority of the county to bring this action was not challenged by Defendant in his pleadings. However, he did challenge it repeatedly in the trial below. De-

fendant's failure to raise this issue in his answer was cured by his counsel's motion at the conclusion of all the proof to amend the pleadings to conform to the evidence, which motion was granted. But for certain provisions in the statutes cited above, we are of the opinion that Defendant's position in this matter would be well taken. Our Supreme Court in the case of *Seeber v. Watlington*, 192 Tenn. 521, 241 S.W.2d 553 (1951) held that the power to bring suit for a county and to employ counsel for such purpose was vested solely in the quarterly county court, and that the county judge had no authority to do so, declaring further that the county judge's power to employ counsel was confined to cases wherein the county was sued. T.C.A. § 5–6–106 provides in part that the county executive, the chief executive officer of the county, possesses the same powers and duties formerly exercised by the county judge. The above has long been the general law on this subject, and at first blush it would appear that this suit was improperly brought.

However, we are of the opinion that plaintiff or one of its officials has been given the right to bring an action to enforce certain provisions of the planning statutes. We are of the opinion that pursuant to § 13–3–410, a county may seek injunctive relief to stop and/or prohibit the sale of lots from a subdivision plat which has not been legally and properly recorded in the register's office of the county. Although not an issue in the case under consideration, pursuant to the provisions of § 13–3–411 a county might enjoin the erection of a building in a non-complying subdivision being built without a building permit. In each case we hold that these two code sections confer specific authority without the necessity of a resolution of the county legislative body. The case of *City of Knoxville v. Peters*, 183 Tenn. 93, 191 S.W.2d 164 (1946) by analogy supports this conclusion. In *City of Knoxville*, the Court held that where the city manager was given authority by ordinance to enforce zoning regulations, with the implied authority to file suit, the city's suit for injunctive relief could be filed without a

special councilmanic resolution authorizing the suit.

■ Having held that the suit was properly brought, we now address what relief may be appropriately obtained. It is clear from the record before us that Defendant violated the provisions of T.C.A. § 13–3–410, which provides for injunctive relief in the event of violation. We hold that the evidence clearly preponderates in favor of the action of the chancellor in enjoining Defendant from selling lots in any part of Magnolia North subdivision found not to be in compliance with the subdivision regulations of Lake County.

■ On the other hand, we can find no statutory or equitable basis to support the action of the chancellor in mandatorily enjoining Defendant to take all the necessary steps to bring the subdivision into compliance with Lake County's subdivision regulations or to post an acceptable bond that would guarantee compliance. The enforcement and penal provisions of the subdivision regulations do not provide for relief of this nature.

The statutes cited above set forth the appropriate penalties. We have a platted subdivision, the developer of which has failed to comply with the subdivision regulations. Pursuant to § 13–3–406, no official of Lake County can do any work to improve any street in the subdivision or install sewer or water lines in any street in the subdivision until the developer complies with these regulations. Section 13–3–411 prohibits the issuance of any building permit by Lake County for the construction of a residence on any of the lots in Defendant's subdivision until the street or streets have been accepted. Pursuant to § 13–3–402, Defendant cannot lawfully record a plat of the subdivision with the Register's Office of Lake County from which he may sell lots until the plat has been approved by the Reelfoot Lake Planning Commission.

■ Lake County is faced with two unique problems which although not directly in issue at this time, must be resolved. The first involves the three recorded plats of Magnolia Harbor North, all illegally recorded. The second problem is that seven or eight lots have been sold by Defendant from these illegal plats. The role of certain members of the Lake County Planning Commission in creating this unfortunate situation cannot be declared blameless. The record shows that all three plats were signed by one or more members of the planning commission who quite candidly declared themselves ignorant of the regulations when they did so. In our opinion, the case of *Foley v. Hamilton*, 659 S.W.2d 356 (Tenn.1983) protects them from any culpability in this matter. The Reelfoot Regional Planning Commission is a "governmental entity" under the provisions of the Tennessee Governmental Tort Liability Act and thus is immune as a matter of law from any liability. *Foley* also spells out the nature of the relief available to the lot owners. The Defendant as developer has a contractual obligation to all the lot owners to take whatever steps are necessary to obtain planning commission approval of this subdivision, as well as to obtain county acceptance of all the roads in the subdivision. In addition, in order to clear the air, Lake County should take whatever steps are necessary to cause the illegally recorded plats to be expunged from the records of the county.

### III. THE ISSUE OF ESTOPPEL.

■ The third issue as raised by Defendant is in actuality one of estoppel. Estoppel was not pled as a defense in Defendant's answer, nor was it covered by Defendant's amendment to conform the pleadings to the proof, that being limited only to the authority of the county to file suit. Accordingly, we hold that that issue is not properly before us on appeal.

The decree of the chancellor enjoining Defendant from selling any lots in the Magnolia Harbor North Subdivision that are found not to be in compliance with the subdivision regulations of Lake County is affirmed. That portion of the chancellor's decree ordering Defendant to take the necessary steps to bring into compliance so much of the subdivision which includes the

lots that have already been sold and to post a bond to guarantee compliance in the future is reversed. This cause is remanded to the Chancery Court of Lake County for such further and other action as may be necessary consistent with this opinion. Costs in this cause are taxed to the Defendant, for which execution may issue, if necessary.

CRAWFORD and FARMER, JJ., concur.